# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HELEN DOE, parent and next friend of Jane Doe, et al., | |
| Plaintiffs-Appellees, | **No. 23-16026** |
| v. | Appeal from the United States District Court for the District of Arizona (No. 4:23-cv-00185-JGZ) |
| THOMAS C. HORNE, in his official capacity as State Superintendent of Public Instruction, et al., | |
| Defendants-Appellants, | |
| and | |
| WARREN PETERSEN, Senator, President of the Arizona State Senate; BEN TOMA, Representative, Speaker of the Arizona House of Representatives, | |
| Intervenor-Defendants-Appellants. | |

## RESPONSE TO INTERVENOR-DEFENDANTS-APPELLANTS' EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR A STAY PENDING APPEAL

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................3

   A.   Movants Will Not Be Irreparably Injured Without a Stay. ........................4

   B.   Movants Have Failed to Make a Strong Showing That They Will Succeed on the Merits. ......................................................................6

      1.   The District Court Properly Applied Heightened Scrutiny. ....................6

      2.   The District Court Did Not Err—Let Alone Clearly Err—In Its Determination That Transgender Girls Who Have Not Undergone Male Puberty Do Not Have an Athletic Advantage Over Other Girls. ...................10

      3.   The Ban Fails Even Rational Basis Review. ...........................................12

      4.   The Ban Violates Title IX........................................................................14

   C.   The Third and Fourth Factors Also Favor Plaintiffs. .................................15

      1.   Plaintiffs Will Be Substantially Injured if the Injunction Is Stayed........15

      2.   The Public Interest Favors Denial. .........................................................18

CONCLUSION ....................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ....................................................................4, 6, 15

*Anderson v. United States*,
  612 F.2d 1112 (9th Cir. 1980) ....................................................................6

*Animal Legal Defense Fund v. Wasden*,
  878 F.3d 1184 (9th Cir. 2018) ...................................................................14

*Ariz. Democratic Party v. Hobbs*,
  976 F.3d 1081 (9th Cir. 2020) ....................................................................4

*Boardman v. Inslee*,
  978 F.3d 1092 (9th Cir. 2020) ...................................................................14

*Bostock v. Clayton Cnty.*,
  140 S. Ct. 1731 (2020)................................................................................14

*Bucklew v. Precythe*,
  139 S. Ct. 1112 (2019)..................................................................................9

*Clark v. Ariz. Interscholastic Athletic Ass'n*,
  695 F.2d 1126 (9th Cir. 1982) ("*Clark I*") .............................................15

*Clark v. Ariz. Interscholastic Athletic Ass'n*,
  886 F.2d 1191 (9th Cir. 1989) ("*Clark II*") ...........................................15

*Collins v. Brewer*,
  727 F. Supp. 2d 797 (D. Ariz. 2010) .......................................................16

*Cornhusker Cas. Ins. Co. v. Kachman*,
  553 F.3d 1187 (9th Cir. 2009) ...................................................................17

*D.T. v. Christ*,
  552 F. Supp. 3d 888 (D. Ariz. 2021) .........................................................6

*Doe v. Snyder*,
  28 F.4th 103 ( 9th Cir. 2022) ....................................................................14

*Does 1-5 v. Chandler*,
    83 F.3d 1150 (9th Cir. 1996) ..................................................................6

*Golinski v. U.S. Off. of Pers. Mgmt.*,
    824 F. Supp. 2d 968 (N.D. Cal. 2012) .................................................13

*Grabowski v. Ariz. Bd. of Regents*,
    69 F.4th 1110 (9th Cir. 2023) ........................................................14, 16

*Grimm v. Gloucester Cnty. Sch. Bd.*,
    972 F.3d 586 (4th Cir. 2020) .........................................................14, 16

*Hecox v. Little*,
    479 F. Supp. 3d 930, (D. Idaho 2020) ........................................7, 8, 16

*Hernandez v. Sessions*,
    872 F.3d 976 (9th Cir. 2017) ..................................................................6

*Hoohuli v. Ariyoshi*,
    631 F. Supp. 1153 (9th Cir. 1986) .......................................................12

*In re Levenson*,
    587 F.3d 925 (9th Cir. 2009) ...............................................................13

*Innovation Law Lab v. McAleenan*,
    924 F.3d 503 (9th Cir. 2019) ..................................................................5

*Jana-Rock Constr., Inc. v. N.Y. State Dep't of Econ. Dev.*,
    438 F.3d 195 (2d Cir. 2006) ................................................................12

*Karnoski v. Trump*,
    926 F.3d 1180 (9th Cir. 2019) ..........................................................6, 7

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012) ...............................................................4

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ..........................................................3, 18

*McCormack v. Hiedeman*,
    694 F.3d 1004 (9th Cir. 2012) .............................................................10

*Nken v. Holder*,
556 U.S. 418 (2009)..............................................................3, 4, 5, 18

*Oakland Trib., Inc. v. Chron. Publ'g Co.*,
762 F.2d 1374 (9th Cir. 1985) ...........................................18

*Obergefell v. Hodges*,
576 U.S. 644 (2015).............................................................16

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) ............................................4

*Romer v. Evans*,
517 U.S. 620 (1996).............................................................13

*Schmoll v. Saul*,
614 F. Supp. 3d 691 (N.D. Cal. 2020)..................................8

*U.S. Dep't of Agric. v. Moreno*,
413 U.S. 528 (1973).............................................................13

*U.S. v. Edge Broad. Co.*,
509 U.S. 418 (1993).............................................................9

*U.S. v. Virginia*,
518 U.S. 515 (1996)...........................................................7, 12

*United Steelworkers of Am. Loc. 13792 v. Mikokem Corp. Cemeteries*,
2005 WL 2090884 (E.D. Mich. Aug. 30, 2005)..................17

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989).............................................................9

*Witt v. Dep't of the Air Force*,
527 F.3d 806 (9th Cir. 2008) ...........................................7–8

*Young v. Motion Picture Ass'n of Am.*,
299 F.2d 119 (D.C. Cir. 1962)............................................18

**Statutes**

Ariz. Rev. Stat. § 15-120.02 ..............................................................*passim*

**Regulations**

34 C.F.R. 106.41(b) ....................................................................14

**Circuit Rules**

9th Cir. R. 27-3 ..........................................................................2

# INTRODUCTION

Plaintiffs Jane Doe and Megan Roe are two transgender girls who want to play on the girls' sports teams at their schools. Ariz. Rev. Stat. § 15-120.02 (the "Ban") prohibits them from doing so because it categorically bars every transgender girl, regardless of her individual circumstances, from playing on a girls' sports team. Jane and Megan therefore brought an as-applied challenge to the Ban and moved for a preliminary injunction on their Equal Protection Clause and Title IX claims to enable them to play sports this school year.

Following extensive written briefing, oral argument, and careful consideration of the evidence submitted by the parties, the district court granted Plaintiffs' preliminary injunction motion, holding that the Ban likely violates the Equal Protection Clause under both heightened scrutiny and rational basis review because it is "based on overbroad generalizations and stereotypes that erroneously equate transgender status with athletic ability," "overly broad," and premised on a "hypothesized" problem, rather than an actual problem substantiated by any evidence. A37–38.[1] The district court further held that Plaintiffs were likely to succeed on their Title IX claims because this Circuit has clearly held that discrimination based on transgender status violates Title IX, and Plaintiffs are

---

[1] Plaintiffs cite to the Exhibits to Intervenor-Defendants-Appellants' Emergency Motion (e.g., A9) for items contained therein. Other items are included in the Supplemental Appendix accompanying this response (e.g., SA4).

unable to play on boys' teams. Because of the severe and irreparable harm that Plaintiffs would suffer in the absence of an injunction, and in light of the fact that there was "no evidence that any Defendant will be harmed by allowing Plaintiffs to continue playing with their peers as they have done until now," the district court granted their preliminary injunction. A42.

Movants unsuccessfully sought a stay in the district court. Relying on the same arguments already rejected below, Movants now ask this Court for a stay on an "emergency" basis,[2] but they fail to meet their heavy burden. Movants cannot show that they will suffer any irreparable harm in the absence of a stay. They offer only that the State of Arizona is harmed when it cannot enforce its statutes (even if unconstitutional) and the baseless assertion that Arizona's non-transgender girls will be irreparably harmed by being somehow displaced by Jane and Megan.

Nor have Movants made a strong showing that they will succeed on the merits of their appeal because the district court did not abuse its discretion. The district court correctly applied heightened scrutiny and found that the Ban did not likely withstand it, correctly found that transgender girls who have not undergone male puberty do not have an athletic advantage over other girls, and correctly held

---

[2]     Plaintiffs-Appellees disagree that the circumstances of this case justify emergency motion practice. Allowing two transgender girls in Arizona to play on girls' sports teams—as they were permitted to do prior to the Ban— is not an emergency in any sense of the word. Circuit Rule 27-3 is instead properly reserved for emergent cases, such as those involving parties in an immigration proceeding who are facing imminent removal.

that Title IX prohibits transgender discrimination under this Circuit's controlling precedent.

Movants ignore the substantial injury to Jane and Megan that will flow from being prevented from playing sports on girls' teams while this Court considers Movants' appeal—harm that the district court correctly found would be irreparable. Prohibiting Plaintiffs from participating in school sports will deprive them of the social, educational, physical, and emotional health benefits that come from school sports, as well as subject them to the shame and humiliation of being excluded from a school activity simply because they are transgender.

The public interest also does not favor a stay. The Ninth Circuit has been clear: "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal citation and quotations omitted). So too here.

Movants' weak showing does not warrant an "intrusion into the ordinary processes of administration and judicial review" and does not justify this Court's exercise of judicial discretion. *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation omitted). Accordingly, the Court should deny Movants' motion.

## ARGUMENT

A stay pending appeal is "an intrusion into the ordinary processes of administration and judicial review," and "is not a matter of right, even if

irreparable injury might otherwise result." *Nken*, 556 U.S. at 427 (citation omitted). Movants have the burden to demonstrate that a stay is justified based on the following factors: (1) whether the stay applicant has made a strong showing of a likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id.* at 434; *Al Otro Lado v. Wolf,* 952 F.3d 999, 1006–07 (9th Cir. 2020). The first two factors are the most critical. *Nken*, 556 U.S. at 434.

Movants cannot meet—and have not met—their burden here.

### A. MOVANTS WILL NOT BE IRREPARABLY INJURED WITHOUT A STAY.

Movants fail to demonstrate—as they must—a "*probability* of irreparable injury if the stay is not granted." *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012). They offer only a single unpersuasive paragraph in which they argue that the "sovereign interest of the State of Arizona" is irreparably injured "when it cannot enforce its valid statutes." Movants' Motion ("Mot.") at 19. However, as the district court correctly held, the State "cannot suffer harm from an injunction that merely ends an unlawful practice." A42 (*citing Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).

Even assuming that enjoining an unconstitutional statute as to Plaintiffs caused the State some abstract form of harm, it is far from the concrete, irreparable

4

injury required to disturb the district court's ruling. *Cf. Ariz. Democratic Party v. Hobbs*, 976 F.3d 1081, 1086 (9th Cir. 2020) (granting stay where denial would "send[] the State scrambling to implement and to administer a new procedure for curing unsigned ballots at the eleventh hour"); *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 510 (9th Cir. 2019) (granting stay because preliminary injunction enjoined "one of the few congressionally authorized measures available to process the approximately 2,000 migrants who are currently arriving at the Nation's southern border on a daily basis").

In the absence of any irreparable harm to the State, Movants instead argue that non-transgender girls in Arizona will suffer irreparable harm absent a stay because Jane's and Megan's participation on girls' sports teams "threatens to displace biological girls from limited places on sports teams and competitions." Mot. at 18. This argument is meritless. As the district court rightly found, there is "no evidence that the schools limit the number of girls who participate in any of the sports at issue," "no evidence that either Plaintiff would present an advantage, let alone any unfair advantage, if allowed to participate," and no evidence of *any* displacement caused by the Arizona Interscholastic Association's previous policy, let alone any caused by Jane or Megan. A7, A15, A17, A23, A38. "[S]imply showing some possibility of irreparable injury" is insufficient for Movants to meet their burden. *Nken*, 556 U.S. at 434 (citation and quotation marks omitted).

### B.  MOVANTS HAVE FAILED TO MAKE A STRONG SHOWING THAT THEY WILL SUCCEED ON THE MERITS.

Given that Movants' "showing of irreparable harm is weak at best," Movants must "make a commensurately strong showing of a likelihood of success on the merits to prevail." *Al Otro Lado*, 952 F.3d at 1010.  They have not and cannot do so—the district court based its decision neither on an erroneous legal standard nor on clearly erroneous findings of fact.[3]  In light of the district court's "wide discretion in issuing preliminary injunctions," *Does 1-5 v. Chandler*, 83 F.3d 1150, 1152 (9th Cir. 1996), and the "limited and deferential review" of that discretion, *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017), Plaintiffs are likely to prevail upon appeal.

### 1.  THE DISTRICT COURT PROPERLY APPLIED HEIGHTENED SCRUTINY.

The Ban discriminates against transgender girls and—as the district court correctly held—is thus subject to intermediate scrutiny.  A34–35; *see Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019); *D.T. v. Christ*, 552 F. Supp. 3d 888, 896 (D. Ariz. 2021).

---

[3]  Though Movants claim that the district court erred in treating the injunction as prohibitory rather than mandatory, Mot. at 3, either standard is satisfied by the district court's findings that "very serious damages" would result absent an injunction and that, as a matter of fact and of law, this was "not a doubtful case," A42 (citing *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)).

Contrary to Movant's argument, the district court correctly applied intermediate scrutiny and did not require "perfect tailoring" of the Ban to the purported important government interests of protecting girls from physical injury in sports and promoting equality and fairness in athletic opportunities. Mot. at 5. The district court rightly considered the breadth of the Ban and its effects on individuals other than Plaintiffs and held that the Ban's categorical exclusion of transgender girls at all grade levels and without regard to whether they had or would ever experience male puberty was "overly broad," based on "generalizations and stereotypes that erroneously equate transgender status with athletic ability," unsupported by empirical evidence, and based on a "hypothesized problem." A37–38 (citing *U.S. v. Virginia*, 518 U.S. 515, 533 (1996) and *Hecox v. Little*, 479 F. Supp. 3d 930, 982 (D. Idaho 2020)). The district court further noted that the Ban's policy of allowing "biological girls" to play on boys' sports teams belied its purported safety justification. A22.

Nor did the district court "incorrectly conflate[]" the as-applied nature of Plaintiffs' challenge with the "substantive standard" that it needed to apply. Mot. at 7–8. Ninth Circuit precedent actually *requires* courts to consider the as-applied implications as to the plaintiffs. *See Karnoski*, 926 F.3d at 1200 (noting that the Ninth Circuit has held that the heightened scrutiny approach "is as-applied rather than facial") (citation and quotation marks omitted); *Witt v. Dep't of the Air Force*,

7

527 F.3d 806, 819 (9th Cir. 2008) (explaining that the as-applied approach is the "preferred course of adjudication since it enables courts to avoid making unnecessarily broad judgments") (citation omitted). Courts therefore frequently look to the circumstances of the individual plaintiffs when applying intermediate scrutiny. *See, e.g.*, *Hecox*, 479 F. Supp. 3d at 982 (holding that Idaho's "categorical exclusion of transgender women athletes has no relationship to ensuring equality and opportunities for female athletes in Idaho" and thus failed to satisfy intermediate scrutiny since it did not take account of whether a transgender woman was receiving hormone treatments); *Schmoll v. Saul*, 614 F. Supp. 3d 691, 695 (N.D. Cal. 2020) (analyzing a policy that discriminated against same-sex couples under intermediate scrutiny and emphasizing that in an as-applied challenge "the government must demonstrate that a justification exists for the policy as applied to the individual in question"). Thus, the consideration of transgender girls like Plaintiffs—who have not experienced and will not experience male puberty—was essential to the district court's proper and thorough analysis of the Ban's constitutionality.

In the face of this clear precedent, Movants' inapposite case law does nothing to salvage their argument. Indeed, *none* of the cited cases involves an equal protection challenge, much less an analysis under intermediate scrutiny.[4]

Neither did the district court improperly "disregard[]" evidence about post-pubescent transgender females, Mot. at 5; instead, it correctly found that it could answer the question before it—whether the Ban's categorical prohibitions were substantially related to a government interest—without deciding what advantages, if any, post-pubertal transgender girls might have.[5] *See* A24.

---

[4] *See Ward v. Rock Against Racism*, 491 U.S. 781, 801 (1989) (holding that a New York City regulation was narrowly tailored to serve significant government interests under a First Amendment facial challenge); *U.S. v. Edge Broad. Co.*, 509 U.S. 418, 427–29 (1993) (holding that a regulation limiting commercial speech directly advanced the governmental interest asserted and swept no broader than necessary to do so under a First Amendment challenge); *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019) (holding that an as-applied challenge to lethal injection did not violate the Eighth Amendment under the *Baze-Gossip* test). In any event, even in the cited cases, the Supreme Court did take note of the individual circumstances of the plaintiffs in assessing whether the law was unconstitutional. *See, e.g.*, *Edge Broad.*, 509 U.S. at 429–30 (analyzing under the fourth factor of *Central Hudson* whether the regulation was more extensive than necessary as it related to the plaintiff).

[5] Movants incorrectly assert that the district court found that "biological males who have gone through male puberty *do* have a significant competitive advantage in sports." Mot. at 4 (citing A24). The district court made no such finding.

## 2. THE DISTRICT COURT DID NOT ERR—LET ALONE CLEARLY ERR—IN ITS DETERMINATION THAT TRANSGENDER GIRLS WHO HAVE NOT UNDERGONE MALE PUBERTY DO NOT HAVE AN ATHLETIC ADVANTAGE OVER OTHER GIRLS.

The district court also did not commit any error—let alone clear error—in its determination that Movants had failed to demonstrate that transgender girls who have not undergone male puberty have an athletic advantage over other girls. *See McCormack v. Hiedeman*, 694 F.3d 1004, 1018 (9th Cir. 2012) ("A district court's factual findings that underlie a preliminary injunction are reviewed for clear error, and may be reversed only if illogical, implausible, or without support in inferences that may be drawn from the facts in the record." (citation and quotation marks omitted)). The district court carefully weighed the evidence before it and credited expert evidence from pediatric endocrinologist Dr. Shumer that the well-established scientific consensus is that "prepubertal differences between boys and girls in various athletic measurements are minimal or nonexistent." A28, SA144. In contrast, the district court found that Movants' expert testimony about some "small differences," A26–27, A373–74, in isolated areas between prepubertal boys and girls is "observational, does not determine a cause for what is observed, and fails to account for other factors which could explain the data," A3, A373–74, A381. These factors include greater societal encouragement of athleticism in boys, greater opportunities for boys to play sports, and differences in the preferences of

10

the boys and girls surveyed, among others.  A26–27, A373–74, A381.  As the district court correctly found, "transgender girls, who are being raised in conformance with their gender identity, will be subject to the same social/cultural factors that girls face that correlates to lower physical fitness scores."  A27.

The district court correctly found that "[t]ransgender girls who receive puberty-blocking medication do not have an athletic advantage over other girls," based on extensive expert testimony from experts in the medical treatment of transgender adolescents, who explained that transgender girls "who receive hormone therapy after receiving puberty-blocking medication will develop the skeletal structure, fat distribution, and muscle and breast development typical of other girls" and "have the same levels of circulating estrogen and testosterone as other girls."  A29–30, SA012, SA149, SA058–59.  The district court also found that transgender girls who "have not yet undergone male puberty, or who have received puberty-blocking medication at the onset of puberty do not present any unique safety risk to other girls."  A30, A375, A378–79, SA153.

The above factual findings supported the district court's accurate conclusion that Movants failed to meet their demanding burden to demonstrate that the Ban is substantially related to the important government interests that they allege it advances.  *Virginia*, 518 U.S. at 533.

### 3.    THE BAN FAILS EVEN RATIONAL BASIS REVIEW.

Movants claim that the Ban should be subject to rational basis review because "Plaintiffs do not challenge the classification based on sex, but rather how Arizona defines sex." Mot. at 11. As discussed above, the district court correctly held that the Ban is facially discriminatory against transgender girls. A34–35. Moreover, unlike Movant's cited cases, the Ban here is not an affirmative action program that simply leaves transgender people off of a list of possible beneficiaries, in which case the court's task may be to determine whether the parameters of the list are reasonable.[6] Rather, the Ban specifically singles transgender girls and women out for *exclusion*, discriminating against them based on their sex.

While the district court was correct to apply heightened scrutiny, it also correctly held that the Ban fails even rational basis review because it is "not related to any important government interest" and because the "bare desire to harm a

---

[6]     *See Jana-Rock Constr., Inc. v. N.Y. State Dep't of Econ. Dev.*, 438 F.3d 195, 200–02, 205, 211 (2d Cir. 2006) (applying rational basis review to an affirmative action program that did not include people of non-Latin American Spanish descent in its definition of "Hispanic" and holding that strict scrutiny was not warranted where a race-based benefit was underinclusive and there was no evidence of discriminatory purpose); *Hoohuli v. Ariyoshi*, 631 F. Supp. 1153, 1159 (9th Cir. 1986) (applying rational basis to "examine the parameters of the beneficiary class" where the plaintiffs alleged that a law benefitting "Hawaiians" and "native Hawaiians" was unconstitutional because its definitions were overbroad).

politically unpopular group cannot constitute a legitimate governmental interest." A38–39 (citing *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973)).

Movants argue that the Ban survives rational basis review because separating sports based on biological sex is "not clearly irrelevant" to the Ban's stated purposes. Mot. at 12. However, Plaintiffs are not challenging the sex separation of sports; they are challenging the Ban's constitutionality because it singles them out for exclusion. Moreover, the Ban does not survive rational basis review because its "breadth . . . is so far removed from the[] particular justifications" put forward in support of it, that it is "impossible to credit them." *Romer v. Evans*, 517 U.S. 620, 635 (1996) (Colorado constitutional amendment denying protections to gay men, lesbians, and bisexuals was too far removed from the purported state interests of respecting other citizens' freedom of association and conserving state resources to withstand constitutional scrutiny); *see also In re Levenson*, 587 F.3d 925, 931 (9th Cir. 2009) (denial of benefits to same-sex spouses could not satisfy rational basis review); *Golinski v. U.S. Off. of Pers. Mgmt.*, 824 F. Supp. 2d 968, 995–1002 (N.D. Cal. 2012) (holding in an as-applied challenge that the Defense of Marriage Act failed to satisfy rational basis review

because its purported justifications bore no rational relationship to its effect of discriminating against people seeking same-sex marriage).[7]

### 4. THE BAN VIOLATES TITLE IX.

Plaintiffs are also likely to succeed on appeal on their Title IX claims. First, it is settled law that discrimination against transgender individuals is impermissible under Title IX. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1741 (2020) (holding in the context of Title VII that "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex"); *Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022) (noting that *Bostock*'s holding extends to Title IX); *Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1116 & n.1 (9th Cir. 2023) (affirming *Snyder* and approvingly citing to *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020) (holding that discrimination against transgender individuals violates Title IX)).

Movants nevertheless argue that because the Ban discriminates on the basis of "biological sex," it falls under Title IX's exclusion for sex-segregated sports. *See* 34 C.F.R. 106.41(b). However, as discussed above, Plaintiffs are not

---

[7] Movants' cited cases do not move the needle. Unlike in *Animal Legal Defense Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018), the legislative record here does not support a finding that the law was solving an actual rather than "hypothesized" problem, A38. And unlike in *Boardman v. Inslee*, 978 F.3d 1092 (9th Cir. 2020), the Ban's legislative history demonstrates that it was motivated by animus towards transgender individuals. *See* A21–22.

14

challenging the sex separation of sports; they are challenging the Ban under Title IX because it discriminates against them based on their transgender status, which is sex based discrimination.[8]

Finally, allowing Plaintiffs—who, as the district court found, are girls (A30–31)—to play on girls' sports teams is fully consistent with Title IX's animating principles; conversely, denying them the opportunity to play athletics is precisely the type of discrimination that Title IX was enacted to prohibit.

## C. THE THIRD AND FOURTH FACTORS ALSO FAVOR PLAINTIFFS.

Because the first two factors "are the most critical," and both favor Plaintiffs, the Court need not reach the final two. *Al Otro Lado*, 952 F.3d at 1007 (holding that the last two factors "are reached only once an applicant satisfies the first two factors"). Nevertheless, both factors favor Plaintiffs.

### 1. PLAINTIFFS WILL BE SUBSTANTIALLY INJURED IF THE INJUNCTION IS STAYED.

As the district court correctly held, "Plaintiffs will suffer severe and irreparable mental, physical, and emotional harm" if the Ban is applied to them, because it will "effectively exclude" them from playing school sports. A6.

---

[8] Movants' citation to *Clark*, Mot. at 14, is puzzling; plaintiffs there did not even bring a claim under Title IX. *See Clark v. Ariz. Interscholastic Athletic Ass'n*, 695 F.2d 1126, 1128 (9th Cir. 1982) ("*Clark I*"); *Clark v. Ariz. Interscholastic Athletic Ass'n*, 886 F.2d 1191, 1192 (9th Cir. 1989) ("*Clark II*").

Indeed, Movants do not challenge the district court's finding that the Ban will deprive Plaintiffs of the "social, educational, physical, and emotional health benefits that both sides acknowledge come from school sports," or that such harm was recognized as cognizable in *Grabowski*. A41 (citing *Grabowski*, 69 F.4th at 1121).

Instead, Movants trivialize the real and irreparable harms of shame, humiliation, and dignitary wounds that Plaintiffs will face because of their exclusion from a school activity for a personal characteristic over which they have no control. Mot. at 15–16. Movants' position is incorrect. *See Obergefell v. Hodges*, 576 U.S. 644, 678 (2015) ("Dignitary wounds cannot always be healed with the stroke of a pen."); *Grimm*, 972 F.3d at 625 (explaining that the stigma of exclusion that "publicly brand[s] all students with a scarlet 'T'" constitutes cognizable harm) (citation omitted); *Collins v. Brewer*, 727 F. Supp. 2d 797, 813 (D. Ariz. 2010) ("back of the bus" treatment for gay and lesbian employees unable to fully participate in state's health plan "relegates Plaintiffs to a second-class status" constituting "constitutional and dignitary harms") (citation omitted); *Hecox*, 479 F. Supp. 3d at 987 (dignitary wounds of embarrassment, harassment, and invasion of privacy constituted irreparable injury). Movants' scattered handful of out-of-circuit cases—all of which predate *Obergefell*—are inapposite, as each deals with the shame and humiliation that an individual might experience in

relation to an *individual adverse employment or disciplinary action*, and none challenges a law that targets a vulnerable group for exclusion.[9]

None of Movants' other arguments hold water.[10]  The district court correctly found that Plaintiffs "play like girls" and cannot play on boys' sports teams because doing so would directly contradict their medical treatment, jeopardize their health, and expose them to a safety risk.  A30–32.  This undermines Movants' argument that "[b]eing required to compete on an even biological footing is not a cognizable harm."  Mot. at 15.  Nor does Plaintiffs' alleged "delay" in bringing this lawsuit undercut their claim of irreparable injury.  Plaintiffs filed this case a few months before the start of sports for the school year, which was merely seven months after the Ban went into effect.  This timeline comports with the reality of

---

[9]   *See, e.g.*, *United Steelworkers of Am. Loc. 13702 v. Mikokem Corp. Cemeteries*, 2005 WL 2090884, at *4 (E.D. Mich. Aug. 30, 2005) (union workers in breach of contract dispute had not shown that the humiliation they might suffer by virtue of the elimination of seven union employees' positions constituted cognizable harm at preliminary injunction stage).

[10]  Movants argue here—having not raised the argument during briefing or oral argument on Plaintiffs' motion for preliminary injunction—that it is Plaintiffs' "medical condition, not . . . the States' sex-based separation of sports teams" that causes their exclusion from girls' teams and is the reason they cannot play on boys' teams.  Mot. at 15.  The Ninth Circuit should not consider that argument.  *See Cornhusker Cas. Ins. Co. v. Kachman*, 553 F.3d 1187, 1191 (9th Cir. 2009) ("Ordinarily, an appellate court will not hear an issue raised for the first time on appeal.")  In any event, there is no doubt that the Ban excludes Plaintiffs because they are transgender girls and that playing on a boys' team would be "painful and humiliating" for Plaintiffs because they are transgender girls, regardless of their diagnoses of gender dysphoria.  A41.

Plaintiffs' weighty decision to file a constitutional action against the State, particularly because they are two transgender minors already at risk of violence, harassment, and discrimination. In support of their argument, Movants cite cases with *significantly* longer timelines between the onset of the alleged harm and the motion for an injunction than those at issue here—from "many years" to at least seven years.[11]

### 2.    THE PUBLIC INTEREST FAVORS DENIAL.

Finally, the public interest favors denial because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (citation omitted). Movants altogether ignore that rule. Boiled down, all that Movants appear to contend is that the district court somehow erred by finding that "there is no evidence that any Defendant will be harmed by allowing Plaintiffs to continue playing with their peers as they have done until now." A42. The district court's finding is based on Movants' own failure to adduce any record evidence to the contrary, and it is far from the type of "blithe assertion" discussed in *Nken*. 556 U.S. at 436.

---

[11]    *See, e.g.*, *Oakland Trib., Inc. v. Chron. Publ'g Co.*, 762 F.2d 1374, 1375 (9th Cir. 1985) (challenged exclusivity provisions had been in place for "many years"); *Young v. Motion Picture Ass'n of Am.*, 299 F.2d 119, 121 (D.C. Cir. 1962) (delay of at least seven years between the alleged onset of the harm and the filing of the lawsuit).

## CONCLUSION

For the reasons stated above, the Court should deny the motion to stay the district court's injunction pending appeal.

RESPECTFULLY SUBMITTED this 8th day of August, 2023.

**OSBORN MALEDON, P.A.**

By: *s/ Eric M. Fraser*

Eric M. Fraser
Colin M. Proksel
2929 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012

**DEBEVOISE & PLIMPTON LLP**

Jyotin Hamid
Justin R. Rassi
Amy C. Zimmerman
66 Hudson Boulevard
New York, New York 10001

**NATIONAL CENTER FOR LESBIAN RIGHTS**

Amy Whelan
Rachel Berg
870 Market Street, Suite 370
San Francisco, California 94102

Attorneys for Plaintiffs-Appellees

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Notice with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 8, 2023.

I certify that the participants in the case registered as CM/ECF users were served via the appellate CM/ECF system.

Dated: August 8, 2023.

**OSBORN MALEDON, P.A.**

By: *s/ Eric M. Fraser*
      Eric M. Fraser
      Colin M. Proksel

Attorneys for Plaintiffs-Appellees

20

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rule 21-1 because it contains 4,425 words and does not exceed 20 pages, excluding those portions pursuant to Federal Rule of Appellate Procedure 32(f), according to Microsoft Word.

This document complies with the typeface requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(6) because it was prepared in a proportionally spaced typeface in Microsoft Word using 14-point Times New Roman font.

Dated: August 8, 2023

By: *s/ Eric M. Fraser*
Eric M. Fraser
Colin M. Proksel

*Attorneys for Plaintiffs-Appellees*