No. 23-16026 c/w No. 23-16030

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

HELEN DOE, parent and next friend of Jane Doe; et al.,

                        Plaintiffs-Appellees,

v.

THOMAS C. HORNE, in his official capacity as State Superintendent of Public Instruction; et al.,

                        Defendants-Appellants,

and

WARREN PETERSEN, Senator, President of the Arizona State Senate; BEN TOMA, Representative, Speaker of the Arizona House of Representatives,

                        Intervenor-Defendants-Appellants.

---

On Appeal from the United States District Court
for the District of Arizona

## ADDENDUM TO CONSOLIDATED BRIEF OF APPELLANT AND INTERVENOR-DEFENDANTS-APPELLANTS

| | | |
|---|---|---|
| D. John Sauer<br>Justin D. Smith<br>Michael E. Talent<br>James Otis Law Group LLC<br>13321 N. Outer Forty Rd., Suite 300<br>St. Louis, MO 63017<br>(314) 562-0031<br>*Attorneys for Intervenor-Defendants-Appellants* | Dennis I. Wilenchik<br>Karl Worthington<br>Wilenchik & Bartness, P.C.<br>2810 N. Third St.<br>Phoenix, AZ 85004<br>(602) 606-2810 | Maria Syms<br>Arizona Department of Education<br>1535 W. Jefferson, BIN #50<br>Phoenix, AZ 85007<br>(602) 542-5240<br>*Attorneys for Appellant Thomas C. Horne* |

## TABLE OF CONTENTS

U.S. Constitution, Amendment XIV, § 1 ................................................... 1

20 U.S.C. § 1681(a) .................................................................................. 2

34 C.F.R. § 106.41 .................................................................................... 3

Save Women's Sports Act (Codified at Ariz. Rev. Stat. § 15-120.02) ....... 5

## U.S. Constitution, Amendment XIV, § 1

**Section 1**. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## **20 U.S.C. § 1681(a)**

**(a) Prohibition against discrimination; exceptions**

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, except that:

## 34 C.F.R. § 106.41

(a) General. No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis.

(b) Separate teams. Notwithstanding the requirements of paragraph (a) of this section, a recipient may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport. However, where a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited, members of the excluded sex must be allowed to try-out for the team offered unless the sport involved is a contact sport. For the purposes of this part, contact sports include boxing, wrestling, rugby, ice hockey, football, basketball and other sports the purpose or major activity of which involves bodily contact.

(c) Equal opportunity. A recipient which operates or sponsors interscholastic, intercollegiate, club or intramural athletics shall provide equal athletic opportunity for members of both sexes. In determining whether equal opportunities are available the Director will consider, among other factors:

> (1) Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes;
>
> (2) The provision of equipment and supplies;
>
> (3) Scheduling of games and practice time;
>
> (4) Travel and per diem allowance;
>
> (5) Opportunity to receive coaching and academic tutoring;

3

(6) Assignment and compensation of coaches and tutors;

(7) Provision of locker rooms, practice and competitive facilities;

(8) Provision of medical and training facilities and services;

(9) Provision of housing and dining facilities and services;

(10) Publicity.

Unequal aggregate expenditures for members of each sex or unequal expenditures for male and female teams if a recipient operates or sponsors separate teams will not constitute noncompliance with this section, but the Assistant Secretary may consider the failure to provide necessary funds for teams for one sex in assessing equality of opportunity for members of each sex.

(d) Adjustment period. A recipient which operates or sponsors interscholastic, intercollegiate, club or intramural athletics at the elementary school level shall comply fully with this section as expeditiously as possible but in no event later than one year from the effective date of this regulation. A recipient which operates or sponsors interscholastic, intercollegiate, club or intramural athletics at the secondary or post-secondary school level shall comply fully with this section as expeditiously as possible but in no event later than three years from the effective date of this regulation.

# Save Women's Sports Act
# (Codified at Ariz. Rev. Stat. § 15-120.02)

**Section 1. Title 15, chapter 1, article 1, Arizona Revised Statutes, is amended by adding section 15–120.02, to read:**

§ 15–120.02. Interscholastic and intramural athletics; designation of teams; biological sex; cause of action; definition

A. Each interscholastic or intramural athletic team or sport that is sponsored by a public school or a private school whose students or teams compete against a public school shall be expressly designated as one of the following based on the biological sex of the students who participate on the team or in the sport:

    1. "Males", "men" or "boys".

    2. "Females", "women" or "girls".

    3. "Coed" or "mixed".

B. Athletic teams or sports designated for "females", "women" or "girls" may not be open to students of the male sex.

C. This section does not restrict the eligibility of any student to participate in any interscholastic or intramural athletic team or sport designated as being for "males", "men" or "boys" or designated as "coed" or "mixed".

D. A government entity, any licensing or accrediting organization or any athletic association or organization may not entertain a complaint, open an investigation or take any other adverse action against a school for maintaining separate interscholastic or intramural athletic teams or sports for students of the female sex.

E. Any student who is deprived of an athletic opportunity or suffers any direct or indirect harm as a result of a school knowingly violating this section has a private cause of action for injunctive relief, damages and any other relief available under law against the school.

5

F. Any student who is subject to retaliation or another adverse action by a school or an athletic association or organization as a result of reporting a violation of this section to an employee or representative of the school or the athletic association or organization, or to any state or federal agency with oversight of schools in this state, has a private cause of action for injunctive relief, damages and any other relief available under law against the school or the athletic association or organization.

G. Any school that suffers any direct or indirect harm as a result of a violation of this section has a private cause of action for injunctive relief, damages and any other relief available under law against the government entity, the licensing or accrediting organization or the athletic association or organization.

H. All civil actions must be initiated within two years after the alleged violation of this section occurred. A person or organization that prevails on a claim brought pursuant to this section is entitled to monetary damages, including damages for any psychological, emotional or physical harm suffered, reasonable attorney fees and costs and any other appropriate relief.

I. For the purposes of this section, "school" means either:

> 1. A school that provides instruction in any combination of kindergarten programs or grades one through twelve.
>
> 2. An institution of higher education.

**Sec. 2. Legislative findings and purpose**

The legislature finds that:

1. "With respect to biological sex, one is either male or female." Arnold De Loof, Only Two Sex Forms but Multiple Gender Variants: How to Explain?, 11(1) COMMUNICATIVE & INTEGRATIVE BIOLOGY (2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5824932.

2. A person's "sex is determined at [fertilization] and revealed at birth or, increasingly, in utero." Lucy Griffin et al., Sex, gender and gender identity: a re-evaluation of the evidence, 45(5) BJPSYCH BULLETIN 291

6

(2021), https://www.cambridge.org/core/journals/bjpsych–bulletin/article/sex–gender–and–gender–identity–a–reevaluation–of–the–evidence/76A3DC54F3BD91E8D631B93397698B1A.

3. "[B]iological differences between males and females are determined genetically during embryonic development." Stefanie Eggers & Andrew Sinclair, Mammalian sex determination—insights from humans and mice, 20(1) CHROMOSOME RES. 215 (2012), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3279640.

4. "Secondary sex characteristics that develop during puberty … generate anatomical divergence beyond the reproductive system, leading to adult body types that are measurably different between sexes." Emma N. Hilton & Tommy R. Lundberg, Transgender Women in the Female Category of Sport: Perspectives on Testosterone Suppression and Performance Advantage, 51 SPORTS MED. 199 (2021), https://doi.org/10.1007/s40279–020–01389–3.

5. There are "'[i]nherent differences' between men and women," and that these differences "remain cause for celebration, but not for denigration of the members of either sex or for artificial constraints on an individual's opportunity." United States v. Virginia, 518 U.S. 515, 533 (1996).

6. In studies of large cohorts of children from six years old, "[b]oys typically scored higher than girls on cardiovascular endurance, muscular strength, muscular endurance, and speed/agility, but lower on flexibility." Konstantinos Tambalis et al., Physical fitness normative values for 6–18–year–old Greek boys and girls, using the empirical distribution and the lambda, mu, and sigma statistical method, 16(6) EUR. J. SPORT SCI. 736 (2016), https://pubmed.ncbi.nlm.nih.gov/26402318. See also, Mark J Catley & Grant R Tomkinson, Normative Health-related fitness values for children: analysis of 85347 test results on 9–17 year old Australians since 1985, 47(2) BRIT. J. SPORTS MED. 98 (2013), https://pubmed.ncbi.nlm.nih.gov/22021354.

7. Physiological differences between males and females relevant to sports performance "include a larger body size with more skeletal-muscle mass,

7

a lower percentage of body fat, and greater maximal delivery of anaerobic and aerobic energy." Øyvind Sandbakk et al., Sex Differences in World–Record Performance: The Influence of Sport Discipline and Competition Duration, 13(1) INT'L J. SPORTS PHYSIOLOGY & PERFORMANCE 2 (2018), https://pubmed.ncbi.nlm.nih.gov/28488921.

8. Men also have higher natural levels of testosterone, which affects traits such as hemoglobin levels, body fat content, the storage and use of carbohydrates, and the development of Type 2 muscle fibers, all of which result in men being able to generate higher speed and power during physical activity. Doriane Lambelet Coleman, Sex in Sport, 80 LAW & CONTEMP. PROBS. 63, 74 (2017) (quoting Gina Kolata, Men, Women and Speed. 2 Words: Got Testosterone?, N.Y. TIMES (Aug. 21, 2008).

9. There is a sports performance gap between males and females, such that "the physiological advantages conferred by biological sex appear, on assessment of performance data, insurmountable." Hilton, supra at 200.

10. While classifications based on sex are generally disfavored, the Supreme Court has recognized that "sex classifications may be used to compensate women for particular economic disabilities [they have] suffered, ... to promote equal employment opportunity, ... [and] to advance full development of the talent and capacities of our Nation's people." United States v. Virginia, 518 U.S. 515, 533 (1996) (internal citations and quotation marks omitted).

11. One place where sex classifications allow for the "full development of the talent and capacities of our Nation's people" is in the context of sports and athletics.

12. Courts have recognized that the inherent, physiological differences between males and females result in different athletic capabilities. See, e.g., Kleczek v. Rhode Island Interscholastic League, Inc., 612 A.2d 734, 738 (R.I. 1992) ("Because of innate physiological differences, boys and girls are not similarly situated as they enter athletic competition."); Petrie v. Ill. High Sch. Ass'n, 394 N.E.2d 855, 861 (Ill. App. Ct. 1979) (noting that "high school boys [generally possess physiological

8

advantages over] their girl counterparts" and that those advantages give them an unfair lead over girls in some sports like "high school track").

13. The benefits that natural testosterone provides to male athletes is not diminished through the use of testosterone suppression. A recent study on the impact of such treatments found that policies like those of the International Olympic Committee requiring biological males to undergo at least one year of testosterone suppression before competing in women's sports do not create a level playing field. "[T]he reduction in testosterone levels required by [policies like those of the International Olympic Committee] is insufficient to remove or reduce the male advantage, in terms of muscle mass and strength, by any meaningful degree." The study concluded that "[t]he data presented here demonstrate that superior anthropometric, muscle mass and strength parameters achieved by males at puberty, and underpinning a considerable portion of the male performance advantage over females, are not removed by the current regimen of testosterone suppression" permitted by the International Olympic Committee and other sports organizations. Rather, the study found that male performance advantage over females "remains substantial" and "raises obvious concerns about fair and safe competition." Hilton, supra at 207, 209.

14. Having separate sex-specific teams furthers efforts to promote sex equality by providing opportunities for female athletes to demonstrate their skill, strength and athletic abilities while also providing them with opportunities to obtain recognition, accolades, college scholarships and the numerous other long-term benefits that flow from success in athletic endeavors.

**Sec. 3. Severability**

If a provision of this act or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the act that can be given effect without the invalid provision or application, and to this end the provisions of this act are severable.

## Sec. 4. Short title

This act may be cited as the "Save Women's Sports Act".