No. 23-16026 c/w No. 23-16030

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HELEN DOE, parent and next friend of Jane Doe, et al.,

*Plaintiffs-Appellees*,

v.

THOMAS C. HORNE, in his official capacity as State Superintendent of Public Instruction, et al.,

*Defendant-Appellants*,

and

WARREN PETERSEN, Senator, President of the Arizona State Senate; and BEN TOMA, Representative, Speaker of the Arizona House of Representatives,

*Intervenors-Defendants-Appellants.*

**On Appeal from the United States District Court for the District of Arizona, Phoenix Case No. 4:23-cv-00185-JGZ**

**PLAINTIFFS-APPELLEES' OPPOSITION TO APPELLANT HORNE'S MOTION FOR JUDICIAL NOTICE**

Jyotin Hamid
Justin R. Rassi
Amy C. Zimmerman
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000
jhamid@debevoise.com
jrassi@debevoise.com
azimmerman@debevoise.com

Eric M. Fraser
Colin M. Proksel
OSBORN MALEDON, P.A.
2929 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 640-9000
efraser@omlaw.com
cproksel@omlaw.com

Amy Whelan
Rachel Berg
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, California 94102
(415) 343-7679
awhelan@nclrights.org
rberg@nclrights.org

**Attorneys for Plaintiffs-Appellees**

After the district court granted Plaintiffs' Motion for a Preliminary Injunction on a full evidentiary record and the appeal of that decision has been fully briefed and argued, Appellant Horne asks this Court to take judicial notice that: (1) on March 12, 2024, the National Health Service of the United Kingdom ("NHS") "reversed course and banned the use by government of puberty suppressing hormones . . . for children and young people as treatment for gender dysphoria because they are unsafe and ineffective"; and (2) the NHS has determined that GnRHa "does not reduce bone density."[1] (Dkt. 161-1 at 1, 3.) For the following three reasons (each of which is sufficient on its own), the Court should deny Appellant Horne's Motion for Judicial Notice or, if the Court grants the Motion, afford the evidence no weight.

*First*, although Appellant styles his request as a motion to take judicial notice, he invites the Court to consider the documents' underlying conclusions as evidence, even though they were never presented to the district court. In other words, Appellant wants this Court to reverse a district court's preliminary injunction—on clearly-erroneous review—based on evidence never considered by that court. That is improper. This Court cannot consider evidence introduced for the first time on appeal; instead the Court is confined to reviewing the record that was before the

---

[1] As Dr. Shumer has explained, puberty suppressing medication is also referred to as gonadotropin-releasing hormone agonists or GnRHa. (3-ER-470.)

1

district court. *See Nationstar Mortg. LLC v. Soria*, 753 F. App'x 456, 457 (9th Cir. 2019) (citing *U.S. v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990)); *Caldwell v. Porch*, 633 F. App'x 399, 400 (9th Cir. 2016) (citing *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988)). Moreover, merely taking judicial notice of documents does not warrant accepting the underlying conclusions in the document as true. *See, e.g.*, *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (it is proper to take judicial notice of the "existence" of documents from a judicial proceeding but not the substance of those documents when they are subject to dispute). The Court may take judicial notice of the fact that these documents are on the website of a government website because that fact—that they exist on the website—is not subject to dispute. But the underlying conclusions about safety, efficacy, etc., are questions of fact that cannot be resolved via judicial notice. Merely taking judicial notice, therefore, cannot justify ruling that the district court's factual findings were clearly erroneous.

*Second*, even if the Court were to consider this evidence, it is irrelevant. As an initial matter, statements from the NHS, as a foreign government entity, are not relevant to the medical standard of care in Arizona and the United States as a whole. As to Appellant Horne's statement regarding puberty suppressing hormones, the district court correctly held, "The appropriateness of medical treatment for gender dysphoria is not at issue in this case . . . Protecting transgender girls from any such

2

risk is not a rationale or purpose of the Act." (1-ER-18.) Appellants have never argued that the district court clearly erred in reaching this finding, nor could they. As to Appellant Horne's statement regarding bone density, the district court correctly found that transgender girls who receive puberty-blocking medication do not have an athletic advantage over other girls based on Plaintiffs' expert declarations from pediatric endocrinologist Dr. Shumer. Any alleged determination from the NHS regarding bone density does not render this finding clear error, especially because this alleged determination did not even examine whether there are differences in bone density between pre-pubertal boys and girls.

*Third*, Appellant Horne mischaracterizes the evidence he attaches to his Motion. Contrary to Appellant Horne's assertion, the NHS did not reverse course and ban the use of puberty suppressing hormones for children and young people as treatment for gender dysphoria. Rather, the NHS stated that it will not *routinely* provide puberty suppressing hormone medication for children and young people. (*See* Dkt. 116-2, Ex. A at 1.) It also did not ban the provision of such treatment in private settings. And contrary to Appellant Horne's assertion, the NHS did not determine that puberty suppressing hormone medications do not reduce bone density. In fact, the NHS reviewed studies relating to the impact of puberty suppressing medication on bone density and concluded: "The results of the studies that reported bone density outcomes suggest that [puberty suppressing hormone

3

medications] *may reduce the expected increase in bone density* (which is expected during puberty)." (Dkt. 116-2, Ex. B at 13, 46 (emphasis added).) The NHS qualified that conclusion based on its determination that those studies are not necessarily "reliable"; however, it did not conclude that puberty suppressing medications "do not reduce bone density." (*Id.* at 13, 46.)

For the foregoing reasons, the Court should deny Appellant Horne's Motion for Judicial Notice or, if the Court grants the Motion, afford the evidence no weight.

**RESPECTFULLY SUBMITTED** this 15th day of April, 2024.

           OSBORN MALEDON, P.A.

           By <u>s/ Eric M. Fraser</u>
              Eric M. Fraser
              Colin M. Proksel
              2929 North Central Avenue, Suite 2000
              Phoenix, Arizona 85012

           DEBEVOISE & PLIMPTON LLP
              Jyotin Hamid
              Justin R. Rassi
              Amy C. Zimmerman
              66 Hudson Boulevard
              New York, New York 10001

           NATIONAL CENTER FOR LESBIAN RIGHTS
              Amy Whelan
              Rachel Berg
              870 Market Street, Suite 370
              San Francisco, California 94102

           **Attorneys for Plaintiffs-Appellees**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Opposition with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 15, 2024.

I certify that the participants in the case registered as CM/ECF users were served via the appellate CM/ECF system.

Dated: April 15, 2024.

**OSBORN MALEDON, P.A.**

By: s/ Eric M. Fraser
Eric M. Fraser
Colin M. Proksel

Attorneys for Plaintiffs-Appellees

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 838 words and does not exceed 20 pages, excluding those portions pursuant to Federal Rule of Appellate Procedure 32(f), according to Microsoft Word.

This document complies with the typeface requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(6) because it was prepared in a proportionally spaced typeface in Microsoft Word using 14-point Times New Roman font.

Dated: April 15, 2024

                                                By: s/ Eric M. Fraser
                                                     Eric M. Fraser
                                                     Colin M. Proksel

                                                Attorneys for Plaintiffs-Appellees